In re David C. KAPLA, Debtor.

David C. Kapla, Plaintiff,

v.

Federal National Mortgage Association, Inc., Defendant,

and

Federal Housing Finance Agency, Intervenor–Defendant.

Bankruptcy No. 11–68878.
Adversary No. 12–04000–PJS.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Dec. 14, 2012.

Jack B. Wolfe, The Wolfe Law Group, West Bloomfield, MI, for Plaintiff. Brian C. Summerfield, Bodman LLP, Troy, MI, Jong–Ju Chang, Bloomfield Hills, MI, Nadav Ariel, Ann Arbor, MI, for Defendant.

Brian C. Summerfield, Bodman LLP, Troy, MI, Jong–Ju Chang, Bloomfield Hills, MI, Nadav Ariel, Ann Arbor, MI, for Defendant.

Howard Cayne, Asim Varma, Michael Johnson, Arnold & Porter LLP, Washington, DC, for Federal Housing Finance Agency.

*OPINION GRANTING DEFENDANTS' MOTION TO DISMISS*

PHILLIP J. SHEFFERLY, Bankruptcy Judge.

### Introduction

The plaintiff in this adversary proceeding is the debtor in this Chapter 7 case. The plaintiff filed this adversary proceeding to set aside a foreclosure sale of his home and to obtain other relief. The defendants filed a motion to dismiss the adversary proceeding. For the reasons explained in this opinion, the Court grants the motion.

### Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and 157(a). The complaint alleges that this is a core proceeding under 28 U.S.C. § 157(b)(2). The Court finds that it is not a core proceeding, but instead is related to a case under title 11. The parties have not objected to the Court hearing and determining this matter, and to enter appropriate orders and judgments.

### Background

On November 7, 2011, David C. Kapla ("Debtor") filed a Chapter 13 petition. The Debtor's schedule A filed with his petition states that he has a "fee simple" interest in a home located at 36419 Avondale Street, Westland, Michigan ("Property"). On November 14, 2011, Fannie Mae filed a motion for relief from the automatic stay to enforce its rights in the Property. The motion alleged that the Debtor did not have any interest in the Property because of a foreclosure sale of the Property that was held on September 15, 2010. The motion further alleged that the time to redeem from the foreclosure sale under applicable Michigan law expired on September 15, 2011. Finally, the motion alleged that because the Debtor did not redeem from the foreclosure sale, the Debtor's bankruptcy estate did not have an interest in the Property. The Debtor objected to the motion. On December 13, 2011, the Court held a hearing. At the conclusion of the hearing, the Court granted the motion. The order granting the motion was en-

tered on December 15, 2011. The Debtor then converted his bankruptcy case from Chapter 13 to Chapter 7. The Debtor also moved for reconsideration of the order granting Fannie Mae's motion for relief from the automatic stay. The Court denied the Debtor's motion.

After converting his case to Chapter 7, the Debtor filed this adversary proceeding against Fannie Mae on January 1, 2012. The complaint seeks to set aside the foreclosure sale of the Property, and requests various other forms of injunctive and declaratory relief against Fannie Mae. Although the Debtor's claims against Fannie Mae all relate to events that occurred prior to the Debtor's bankruptcy case, the Debtor's schedule B filed in his bankruptcy case does not list any claims against Fannie Mae.

After the complaint was served on Fannie Mae, the Debtor and Fannie Mae stipulated to extend the time for Fannie Mae to answer the complaint. On April 24, 2012, the Debtor and Fannie Mae stipulated to permit the Federal Housing Finance Agency ("FHFA") to intervene as a defendant in this adversary proceeding. The stipulation explains that on September 6, 2008, FHFA was appointed as the conservator of Fannie Mae in accordance with the Housing and Economic Recovery Act of 2008, Pub. L. 110–289, 122 Stat. 2654 (codified at 12 U.S.C. § 4617), and the Federal Housing Enterprises Financial Safety and Soundness Act of 1992 (12 U.S.C. §§ 4501–4642) The stipulation further explains that FHFA, as conservator of Fannie Mae, succeeded to all of the rights, titles, powers and privileges of Fannie Mae, including the right to sue and be sued in federal court. On April 27, 2012, the Court entered an order approving the stipulation and permitting FHFA to intervene.

On April 30, 2012, FHFA and Fannie Mae ("Defendants") filed a motion to dismiss this adversary proceeding pursuant to Fed. R. Bankr.P. 7012(b) and Fed. R.Civ.P. 12(b)(6). By agreement of the parties, the Debtor obtained several extensions of time to answer the motion. Eventually, the Debtor filed an answer to the motion. The Defendants subsequently filed a reply to the Debtor's answer. On October 29, 2012, the Court held a hearing on the motion, and took the matter under advisement.

### *The complaint*

The complaint alleges the following facts.

On June 24, 1994, the Debtor obtained financing from D & N Bank for the purchase of the Property (¶ 8). D & N Bank assigned the mortgage to Bank of America pursuant to an assignment recorded July 27, 2000 (¶ 9). Bank of America serviced the loan for Fannie Mae (¶ 10). When the Debtor began to experience financial problems and became late on his mortgage payments, he tried to work with Bank of America, but Bank of America insisted that his account be placed into default, accelerated, and then foreclosed (¶ 18). At that time, the Debtor would have qualified for a reverse mortgage, but neither Bank of America nor Fannie Mae would engage in good faith discussions with the Debtor to resolve his delinquency (¶ 19). Fannie Mae treated the Debtor differently than other similarly situated homeowners in distress by not allowing him to refinance a reverse mortgage to pay off Fannie Mae (¶ 26). Fannie Mae also acted in bad faith by refusing to offer the Debtor all of the available options that it provided to other distressed homeowners, and by failing to accept a payment that was just beyond 30 days late (¶ 33). When the Debtor was laid off from his job, he defaulted on the mortgage (¶ 11). Pursuant to the statuto-

ry provisions in Michigan regarding nonjudicial mortgage foreclosures, Bank of America, the "seller servicer," purchased the Property at a sheriff sale held on September 15, 2010 (¶ 12). After the sheriff sale, Bank of America executed and delivered a quit claim deed of the Property to Fannie Mae on May 2, 2011 (¶ 14). Fannie Mae is a corporation operated by the United States that was "placed under the conservatorship of a federal agency in September, 2008" (¶ 7) in order to "prevent it from going out of business" (¶ 12). After the one year redemption period from the foreclosure sale expired on September 15, 2011, Fannie Mae brought a summary proceeding in the 18th Judicial District Court for the State of Michigan ("State Court Lawsuit") on October 14, 2011 (¶ 15). On October 24, 2011, a judgment of possession ("State Court Judgment") was entered in the State Court Lawsuit in favor of Fannie Mae and against the Debtor (¶ 15).

The complaint contains four counts. Count I seeks injunctive relief staying any eviction of the Debtor from the Property. Count II seeks declaratory relief adjudicating that Fannie Mae is a government actor, and that its actions with respect to the Property have deprived the Debtor of equal protection and due process. Count III seeks a money judgment against Fannie Mae for violations of 42 U.S.C. § 1983. Count IV seeks a money judgment against Fannie Mae because it has deprived the Debtor of equal protection. The Defendants' motion seeks dismissal of all four counts.

### Applicable legal standard

Fed.R.Civ.P. 8(a)(2), incorporated by Fed. R. Bankr.P. 7008(a), requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The purpose of this pleading standard is "to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks and citation omitted). A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), incorporated by Fed. R. Bankr.P. 7012, challenges whether a complaint meets this standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). In deciding a motion to dismiss for failure to state a claim upon which relief may be granted, "[t]he court must construe the complaint in the light most favorable to the plaintiff [and] accept all the factual allegations as true.... A court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations." *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 360 (6th Cir.2001) (citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions...." *Id.* "[A] formu-

laic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). This is because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

Ordinarily, in considering a motion to discuss under Rule 12(b)(6), a court's review is limited to the allegations in the complaint and "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [a] defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims" in the complaint. *Bassett v. National Collegiate Athletic Association,* 528 F.3d 426, 430 (6th Cir.2008) (citing *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir.2001)). However, Fed.R.Civ.P. 12(d), incorporated by Fed. R. Bankr P. 7012, states that "[i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The rule goes on to provide that in such event, "[a]ll parties must be given a reasonable opportunity to present all of the material that is pertinent to the motion."

The Debtor's complaint in this case has a number of documents attached as exhibits. Most of these documents relate to the Property and include the assignment of mortgage from D & N Bank to Bank of America (Exhibit B), the sheriff's deed (Exhibit C), the quit claim deed from Bank of America to Fannie Mae (Exhibit D), and the State Court Judgment (Exhibit E). However, two of the documents do not specifically relate to the Property and instead relate more generally to Fannie Mae. Exhibit A is a Congressional Research Report for Congress dated September 15, 2008 titled "Fannie Mae and Freddie Mac in Conservatorship." This five page document provides a summary of the actions taken by FHFA on September 7, 2008 to place Fannie Mae and Freddie Mac into conservatorships. The complaint refers to Exhibit A in paragraph 7, which alleges that Fannie Mae "was placed under the conservatorship of a federal agency in September, 2008." Exhibit F consists of two separate deeds, neither of which relate in any way to the Debtor or the Property, and both of which are signed by Fannie Mae. The complaint refers to Exhibit F in paragraph 20, which alleges that Fannie Mae obtains exemptions on the transfer tax of its properties by claiming that it is a United States government entity.

■ Although the Defendants' motion seeks dismissal under Fed.R.Civ.P. 12(b)(6), which only requires the court to measure the sufficiency of the complaint, many lengthy documents are attached to the motion as exhibits: statements of Edward J. DeMarco, the acting director of FHFA (Exhibits A and B), a fiscal year 2012 Analytical Perspectives report on the Budget of the U.S. Government from the Office of Management and Budget (Exhibit C), statements by James B. Lockhart issued in 2008 and 2009 (Exhibits D and E), FHFA Reports to Congress for 2009

and 2010 (Exhibits F and G), a Form 10–K Annual Report for Fannie Mae to the United States Securities and Exchange Commission for fiscal year 2011 (Exhibit H), and a copy of a published opinion from a United States District Court (Exhibit I). None of these exhibits are referred to in the Debtor's complaint.

At the hearing on the motion, the Court inquired of the parties whether it should consider the exhibits attached to the Defendants' motion pursuant to Rule 12(d) and treat the motion as a motion for summary judgment. The Defendants answered yes. The Debtor's answer was a bit more complicated. Initially, the Debtor stated that the Court should review and consider all of the documents attached by the parties as exhibits to their papers. However, the Debtor later stated that the Debtor had not been given a reasonable opportunity to present all matters that might be pertinent to the Defendants' motion and that the Debtor would like to have the opportunity to take discovery and learn all of the facts that may be pertinent to the motion.

In light of the Debtor's response to the Court's questions at the hearing, it would be improper for the Court to consider the Defendants' exhibits to their motion without providing the Debtor a reasonable opportunity to present all of the material that he may wish to present pertinent to the motion. Consistent with Fed.R.Civ.P. 12(d), for purposes of adjudicating the Defendants' motion to dismiss, the Court will therefore exclude from consideration all of the exhibits attached to the motion other than Exhibit I, which the Court may permissibly consider since it is a legal authority that is cited in the memorandum of law in support of the motion. The Court will not treat the motion as a motion for summary judgment under Fed.R.Civ.P. 56, and will instead analyze the motion solely as a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6).

### Discussion

The Defendants' motion makes four basic arguments. First, the Defendants argue that the Debtor can prevail on any of the four counts in his complaint only if the actions alleged to have taken place were performed by a "government actor." The Defendants assert that Fannie Mae is not a government actor for constitutional purposes under long standing precedent of the United States Supreme Court, and that FHFA's appointment as conservator of Fannie Mae does not somehow transform Fannie Mae into a government actor. Second, the Defendants argue that even if Fannie Mae is a government actor, the Debtor's complaint must still be dismissed because the statutorily prescribed non judicial foreclosure process used with respect to the foreclosure sale of the Property under Michigan law satisfies all of the due process requirements imposed upon a government actor. Third, the Defendants argue that the Debtor's complaint is an impermissible attempt to relitigate issues already decided in the State Court Lawsuit and is, therefore, barred under both the *Rooker–Feldman* doctrine and under principles of res judicata. Finally, the Defendants argue that the Debtor lacks standing to challenge the foreclosure sale of the Property.

Although the Defendants and the Debtor both request that the Court first tackle the issue of whether Fannie Mae is a government actor, it makes much more sense for the Court to first consider the Defendants' Rooker–Feldman argument because the Court may not have jurisdiction to adjudicate any other issues if the Rooker–Feldman doctrine is applicable to

this case.[1]

### Rooker–Feldman *requires dismissal of some of the Debtor's claims*

■■■ Under the U.S. Supreme "Court's Rooker–Feldman abstention doctrine, . . . a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923)).

> [A]ppellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court. Federal district courts . . . are empowered to exercise original, not appellate, jurisdiction. Plaintiffs in *Rooker* and *Feldman* had litigated and lost in state court. Their federal complaints . . . essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments. We declared such suits out of bounds, *i.e.*, properly dismissed for want of subject-matter jurisdiction.

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283–84, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). The doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284, 125 S.Ct. 1517. For *Rooker–Feldman* to apply, the party asserting claims in federal court must have first lost in state court. The Sixth Circuit Court of Appeals has succinctly stated the rule as follows: "The *Rooker–Feldman* doctrine applies, if it applies at all, only when the state court loser files a new lawsuit in federal court *after* the state court adversely rules." *Rugiero v. DiNardo (In re Rugiero)*, No. 11–2639, 2012 WL 4800059, at *2 (6th Cir. Oct. 10, 2012).

■■■ The Debtor argues that the *Rooker–Feldman* doctrine does not apply in this case because this adversary proceeding "is running parallel with on-going state court litigation pertaining to the invalidity of the state court possession judgment and Sheriff's Sale by Fannie Mae. . . ." (Debtor's Br. at 27, docket entry no. 38). In other words, the Debtor has not yet lost and the State Court Lawsuit is ongoing. The Debtor's point of law is correct: the *Rooker–Feldman* doctrine is not triggered solely because there is a pending state court action concerning the same matter before the federal court. *Exxon Mobil Corp.*, 544 U.S. at 292, 125 S.Ct. 1517. However, the Debtor's factual assertion that the Debtor did not lose in state court is simply wrong.

■■■ The State Court Judgment was entered in the State Court Lawsuit on October 24, 2011. The State Court Judgment unambiguously awarded possession of the Property to Fannie Mae. The State Court Judgment obviously makes the Debtor the loser in the State Court Lawsuit. The Debtor has not identified any "on-going state court litigation." The State Court Lawsuit is over. The Debtor did not file the complaint in this adversary proceeding until January 1, 2012, more than two

---

1. Although the Defendants' motion to dismiss is brought under Fed.R.Civ.P. 12(b)(6), incorporated by Fed. R. Bankr.P. 7012, the Defendants' *Rooker–Feldman* argument is more properly considered under Fed.R.Civ.P. 12(b)(1), incorporated by Fed. R. Bankr.P. 7012, since this argument challenges this Court's subject matter jurisdiction.

months after the State Court Judgment. The only remaining question regarding the application of *Rooker–Feldman* to this adversary proceeding is whether the claims in the Debtor's complaint allege an injury caused by the State Court Judgment, or whether they allege some other injury. Although the parties do not address this question in their briefs, the Sixth Circuit has addressed the legal principles that govern this question.

In *Kovacic v. Cuyahoga County Department of Children & Family Services*, 606 F.3d 301 (6th Cir.2010), the Sixth Circuit explained how the Supreme Court in *Exxon Mobil Corp.* "tightened the scope of *Rooker–Feldman*." *Id.* at 309.

■ In post-*Exxon* analysis, we have distinguished between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker–Feldman* applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker–Feldman* does not apply.

In *McCormick*, we explained that the pertinent inquiry after *Exxon* is whether the "source of the injury" upon which plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is "inextricably intertwined" with the state-court judgment[.]

*Id.* (citing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir.2006) (other citations omitted)). The Sixth Circuit in *McCormick* emphasized that "[t]he key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." 451 F.3d at 394; *see also Hood v. Keller*, 341 F.3d 593, 597 (6th Cir.2003) (instructing that in *Rooker–Feldman* determinations, "federal courts cannot simply compare the *issues* involved in the state-court proceeding to those

raised in the federal-court plaintiff's complaint, but instead must pay close attention to the *relief* sought by the federal-court plaintiff") (internal quotation marks and citation omitted).

■ The allegations of fact in the Debtor's complaint in this adversary proceeding virtually all relate to the foreclosure sale of the Property. Counts I and II of the complaint specifically request the Court to set aside the foreclosure sale and allow the Debtor to retain possession of the Property. These counts directly challenge the State Court Judgment, which awarded possession of the Property to Fannie Mae based upon the deed that it received from the successful purchaser at the foreclosure sale. It is hard to see how any of the Debtor's claims attacking the foreclosure sale could be heard by this Court without this Court having to review the State Court Lawsuit and then make a finding that the State Court Judgment wrongly decided the issues before the state court. Therefore, the Court lacks jurisdiction over counts I and II of the Debtor's complaint.

■ However, the complaint also contains some allegations of fact that do not attack the foreclosure sale of the Property, or the injury caused by the State Court Judgment, but instead relate to other conduct of Fannie Mae. For example, paragraph 17 of the complaint alleges that the Debtor qualified for a reverse mortgage on the Property; paragraph 19 alleges that the Debtor would have qualified for a reverse mortgage, but Fannie Mae would not engage him in any good faith discussions; paragraph 26 alleges that Fannie Mae treated the Debtor differently than other similarly situated homeowners in distress by not allowing him to finance a reverse mortgage to pay off Fannie Mae; paragraph 33 alleges that Fannie Mae acted in

bad faith by refusing to accept a payment from the Debtor that was just beyond 30 days late and by refusing to offer the Debtor all available options that it made applicable to other distressed homeowners; paragraph 34 alleges that Fannie Mae treated the Debtor differently than similarly situated homeowners to whom it had granted late payment forbearances, short sales, reverse mortgages and loan modifications; and paragraph 40 alleges that Fannie Mae selectively denied or refused to properly and fairly consider and/or approve the Debtor for a short sale, reverse mortgage and/or loan modification. Counts III and IV of the Debtor's complaint each request a judgment awarding the Debtor damages in excess of $75,000 along with punitive and exemplary damages, costs, interests and attorney's fees.

Apart from whether these additional allegations of fact are sufficient to state a claim for relief under either count III or IV, the point here is that for *Rooker–Feldman* purposes, these allegations must first be scrutinized to determine whether they complain about the injury caused by the State Court Judgment, or whether they complain about a different injury for which an independent claim may exist against Fannie Mae. Keeping in mind that this matter is before the Court upon the Defendants' motion to dismiss, and accepting, as the Court must, that all of the factual allegations in the Debtor's complaint are true, the Court concludes that the allegations contained in paragraphs 17, 19, 26, 33, 34 and 40, and the relief sought in counts III and IV, do not complain of an injury caused by the State Court Judgment. Instead, these allegations complain of a different injury, consisting of Fannie Mae's failure to approve the Debtor for a reverse mortgage and failure to afford the Debtor those alternatives that it made available to other distressed homeowners. That alleged injury could conceivably give

rise to an independent claim against Fannie Mae that does not require this Court either to set *aside the foreclosure sale or the State Court Judgment. As such, Rooker–Feldman* does not apply to those claims. Therefore, this Court does not lack jurisdiction over those claims, which form the basis for counts III and IV of the Debtor's complaint. Those claims may proceed in this adversary proceeding, subject, of course, to the Defendants' other arguments as to why such claims should still be dismissed under Rule 12(b)(6).

In sum, the Court holds that the *Rooker–Feldman* doctrine prevents this Court from having jurisdiction to consider the Debtor's attack on the foreclosure sale and the State Court Judgment. The Debtor is the loser in the State Court Lawsuit, which adjudicated the validity of the foreclosure sale. The State Court Judgment was entered prior to the time that this adversary proceeding was filed. On the other hand, the Debtor is not precluded by *Rooker–Feldman* from asserting other independent claims against Fannie Mae that relate to injuries not caused by the foreclosure sale and the State Court Judgment, but are alleged to be caused by other conduct of Fannie Mae. Because the application of *Rooker–Feldman* does not bar *all* of the claims set forth in the Debtor's complaint, the Court will grant the Defendants' motion based upon *Rooker–Feldman* only in part. The Court will therefore consider the Defendants' other arguments for dismissal of the Debtor's remaining claims.

*Fannie Mae is not a government actor for purposes of constitutional claims, requiring dismissal of the Debtor's remaining claims*

 The Defendants assert that even if some of the Debtor's claims in his complaint survive a *Rooker–Feldman* analysis,

and are therefore within this Court's jurisdiction, the Defendants' motion to dismiss must still be granted because all of the Debtor's remaining claims are based on alleged constitutional violations by Fannie Mae. Although the Debtor's complaint is not entirely precise or consistent in its use of the terms due process and equal protection, it is sufficiently clear to the Court that all of the Debtor's remaining claims against the Defendants are claims for constitutional violations. The Debtor does not contend otherwise. As such, the determination of whether these claims must be dismissed turns on the question of whether Fannie Mae is a "government actor," because an entity is only liable for claims based on constitutional violations if the entity is held to be a government actor. *Dusenbery v. United States*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.' "); *Center for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir.2011) (holding that "[t]he Fifth Amendment ... does not itself contain a guarantee of equal protection, but instead, incorporates, as against the federal government, the Equal Protection Clause of the Fourteenth Amendment" and evaluating "equal protection claims against the federal government under the Fifth Amendment just as [it] would evaluate equal protection claims against the state and local governments under the Fourteenth Amendment"). The parties agree that the question of whether Fannie Mae is a government actor for purposes of a constitutional claim is an important one. However, they do not seem to agree on what case law governs the issue.

The Defendants' motion argues that the United States Supreme Court has set forth a controlling three-part test in *Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) to determine whether a private corporation can be considered to be a government actor for purposes of federal constitutional claims. *Lebron* involved an action brought by the plaintiff against the National Railroad Passenger Corporation, commonly known as Amtrak. The plaintiff claimed that Amtrak violated his First Amendment rights by refusing to place his advertisement on an Amtrak billboard because of the advertisement's political content. *Id.* at 377, 115 S.Ct. 961. The issue before the court was whether Amtrak "was ... itself a federal entity" for the purpose of determining claims based upon individual rights guaranteed by the Constitution. *Id.* at 378–79, 115 S.Ct. 961. The court conducted an extensive review of the history of government created and government sponsored entities. The court then turned to the specific facts and circumstances of Amtrak. First, the court noted that Congress established Amtrak by special legislation in 1970. *Id.* at 383–84, 115 S.Ct. 961. Second, the court noted that the purpose for creating Amtrak was to further federal government objectives of requiring the continuance and improvement of railroad passenger service in the interest of the public convenience and necessity. *Id.* at 384, 115 S.Ct. 961. Third, the court noted that the legislation creating Amtrak "provides for a board of nine members, six of whom are appointed directly by the President of the United States," with the other three appointments made by the President upon "the advice and consent of the Senate." *Id.* at 385, 115 S.Ct. 961. The court further noted other devices for government control of Amtrak provided for in the legislation creating Amtrak. The court then held as follows:

We hold that where, as here, the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment.

*Id.* at 400, 115 S.Ct. 961.

The Defendants assert that prior to the appointment of FHFA as a conservator for Fannie Mae, it was indisputable that Fannie Mae was not a government actor under the *Lebron* test. The Defendants do not contest that Fannie Mae was created by special legislation, nor do they contest that Fannie Mae was created to further certain governmental objectives. Instead, the Defendants focus on the third element of *Lebron,* which requires permanent governmental control over the entity. Citing H.R.Rep. No. 90–1585, at 65–66 (1968) and 12 U.S.C. § 1717(a)(2), the Defendants note that "[i]n 1968, Congress established Fannie Mae as a 'private corporation' that, while chartered by the federal government, would be 'entirely privately owned.'" (Defs.' Br. at 6–7, docket no. 20.) Therefore, because Fannie Mae is a private entity, over which the government has not retained permanent authority to appoint a majority of directors, the third requirement under *Lebron* is not met and Fannie Mae is not a government actor under *Lebron* for purposes of constitutional claims.

In further support of their assertion that Fannie Mae is not a government actor, the Defendants cite two other cases. The first case, *American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.,* 75 F.3d 1401 (9th Cir.1996), held that "upon an application of *Lebron* principles," Freddie Mac (a government sponsored enterprise substantially identical in all material respects to Fannie Mae) "is not a govern-

ment agency subject to the Fifth Amendment's Due Process Clause." *Id.* at 1409. The second case is *Herron v. Fannie Mae,* 857 F.Supp.2d 87 (D.D.C.2012). *Herron* involved constitutional claims brought against Fannie Mae after the FHFA appointment as conservator. Before turning to the effect of the conservatorship upon Fannie Mae, the *Herron* court first stated that "[i]t is well-settled that pre-conservatorship, Fannie Mae was a private actor." *Id.* at 92.

The Debtor's response to the Defendants' motion only briefly discusses *Lebron.* The Debtor does not seem to quarrel with the Defendants' contention that pre-conservatorship, Fannie Mae was not considered to be a government actor under *Lebron.* However, the Debtor does argue that the appointment of FHFA as conservator, and the actions taken by FHFA as conservator, now provide the requisite level of permanent control over Fannie Mae to make it a government actor under *Lebron.* Putting *Lebron* aside, the Debtor then discusses extensively what he describes as the "seminal" case of *Northrip v. Federal National Mortgage Association,* 527 F.2d 23 (6th Cir.1975).

*Northrip* dealt with an action by a property owner against Fannie Mae alleging due process and other constitutional violations based upon Fannie Mae's foreclosure of a mortgage on the plaintiff's property under Michigan's non judicial foreclosure statute. The Sixth Circuit reviewed the legislation that created Fannie Mae and the legislative history explaining the congressional intent. The court noted that "[t]here is some, and perhaps even significant, government involvement in, and regulation of, the workings of [Fannie Mae]." *Id.* at 31. However, the court ultimately held that there was not sufficient government involvement implicated in Fannie Mae's mortgage foreclosure to permit the

plaintiff to bring an action for constitutional violations against Fannie Mae. *Id.* at 32. The *Northrip* analysis focused heavily on the specific conduct involved in implementing the remedy of a non judicial foreclosure in Michigan and whether that conduct sufficiently implicated government action.

Although the Debtor acknowledges that *Northrip's* holding does not help him, the Debtor tries to avoid its holding by arguing that if *Northrip* were decided today, the Sixth Circuit would come to a different result. In support of this argument, the Debtor's response to the motion to dismiss points to many facts about Fannie Mae that the Debtor says have changed since *Northrip* was decided. For example, the Debtor's response generally discusses changes in the secondary mortgage market, adverse trends in the mortgage industry, deterioration of property values and the heightened prevalence of Fannie Mae in the secondary mortgage market. The Debtor also discusses various federal government initiatives to encourage loan modifications and statements made by congressional leaders about Fannie Mae. Although none of these facts are alleged in the Debtor's complaint, the Debtor argues that the Sixth Circuit would decide *Northrip* differently today based upon these changed facts and would hold Fannie Mae to be a government actor for purposes of constitutional claims. The Debtor concludes by citing numerous cases that were either decided prior to *Lebron* or that address instances where Fannie Mae has been or may be considered to be a part of the federal government for purposes other than liability for constitutional claims.

In considering whether Fannie Mae is a government actor for purposes of constitutional claims, the first question to resolve is what is the appropriate test for the Court to apply. As noted, the Defendants argue that the *Lebron* test governs. The Debtor asserts that various other tests are available that have been used for purposes other than constitutional claims (e.g., determining eligibility for exemptions from transfer taxes for real property). However, the Debtor does not explain why those tests, and not *Lebron*, govern the question of whether Fannie Mae is a government actor for purposes of liability for constitutional claims. Nor does the Debtor discuss a Sixth Circuit case that has addressed which test to apply to determine whether a private corporation is a government actor for constitutional claims.

■ *Parrett v. Southeastern Boll Weevil Eradication Foundation, Inc.*, 155 Fed. Appx. 188 (6th Cir. Nov. 15, 2005), involved a wrongful termination action brought by a former employee against Southeastern Boll Weevil Eradication Foundation, Inc. ("Southeastern"). *Id.* at 189. Southeastern filed a motion to dismiss, arguing that although it was a non-profit corporation formed under Alabama law, it was formed for the purpose of carrying out programs sponsored or recommended by the United States Department of Agriculture to eradicate the boll weevil. Because of this, Southeastern argued that it was entitled to sovereign immunity because it was an arm of the federal government. *Id.* at 189–90. In considering what was the proper test to apply to determine whether state sovereign immunity is applicable, the Sixth Circuit noted that the test for determining whether a corporation may invoke sovereign immunity is different than the test for determining whether a corporation is a government actor for purposes of constitutional claims, even though those tests may overlap. *Id.* at 192. Turning to the question of whether a corporation is an arm of the federal government for purposes of constitutional claims, the Sixth Circuit explained as follows:

The leading case in this area of law is *Lebron v. National Railroad Passenger Corp.,* 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995), where the Supreme Court analyzed whether Amtrak could be sued for a First Amendment violation. *Lebron* identifies three major questions necessary to determine whether a private corporation is an arm of the federal government for purposes of federal constitutional challenges: (1) Creation: Did the government create the corporation by a special law? (2) Objectives: Was the corporation created for the furtherance of governmental objectives? (3) Control: Did the government retain for itself permanent authority to appoint a majority of the directors of the corporation? ... *Lebron* itself suggests that the inquiry over sovereign immunity differs from the inquiry over whether an organization may be subject to constitutional claims: Although holding that Amtrak was subject to First Amendment claims, the Court noted in *dicta* that Amtrak would not be entitled to sovereign immunity because the statute creating the organization specifically states that Amtrak is not an agency of the federal government.

*Id.* at 191–92 (citing *Lebron,* 513 U.S. at 392, 400, 115 S.Ct. 961).

The Debtor is correct that there are multiple other tests that may be used for determining whether Fannie Mae should be treated as a government instrumentality for some purposes. However, the Court concludes that the controlling test for whether Fannie Mae is a government actor for purposes of liability for constitutional claims is the test set forth in *Lebron,* which *Parrett* describes as "[t]he leading case in this area of the law." *Id.* at 191. The Debtor concedes that under the *Lebron* test, Fannie Mae was not treated as a government actor for purposes of constitutional claims against it prior to the ap-

pointment of FHFA as conservator for it. However, as noted earlier, the Debtor argues that whatever the law may have been regarding Fannie Mae *prior* to the appointment of FHFA as a conservator, that appointment was a "game changer."

The effect of the appointment of FHFA as conservator for Fannie Mae upon the question of whether Fannie Mae is a government actor for purposes of constitutional claims was considered in three opinions that the parties cite to the Court. First, *Herron v. Fannie Mae* involved an action brought by a former employee of Fannie Mae for wrongful discharge, civil conspiracy to terminate employment, tortious interference with prospective contractual relations, and First Amendment violations. 857 F.Supp.2d 87, 88 (D.D.C.2012). Similar to this case, FHFA intervened in *Herron* as conservator for Fannie Mae. FHFA then moved to dismiss the constitutional claims under the First Amendment. The District Court for the District of Columbia reviewed the history of Fannie Mae up to the date of the appointment of FHFA as conservator. *Id.* at 89–90. The court noted that in *Lebron,* "the Supreme Court defined what type of entity constitutes a federal actor for the purpose of a constitutional claim." *Id.* at 92. The court reviewed the legislation creating Fannie Mae, how the purposes of Fannie Mae further certain governmental objectives, and noted that when Fannie Mae was created by Congress, the government did not retain the permanent authority to appoint the majority of its directors. The *Herron* court then stated that "[p]re-conservatorship Fannie Mae ... was a non-governmental entity under the reasoning set forth in *Lebron.*" *Id.* at 93. In support of this statement, *Herron* observed in a footnote that "[b]efore *Lebron,* courts regularly determined that Fannie Mae was not a federal actor subject to the Fifth Amend-

ment due process clause." *Id.* at n. 7 (citing *Northrip,* 527 F.2d at 30, and *Roberts v. Cameron–Brown Co.,* 556 F.2d 356 (5th Cir.1977)). The court also noted that the Ninth Circuit held that pre-conservatorship Freddie Mac, a similar entity, was not a government actor under *Lebron. Id.* at 93 (citing *American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.,* 75 F.3d 1401, 1405 (9th Cir.1996)). The *Herron* court then pointed out that "[s]ince *Lebron,* no other court has been presented with the issue of whether pre-conservatorship Fannie Mae was a federal actor." *Id.*

Having established that pre-conservatorship Fannie Mae was not a government actor under *Lebron,* the *Herron* court then reviewed the following traits of the conservatorship to determine whether the appointment of FHFA as conservator for Fannie Mae changed this result. In a federal conservatorship, the conservator "takes over the day-to-day operations and assumes the powers of shareholders, board of directors, and management." *Id.* at 93. "The purpose of the conservator . . . is to restore the entity to fiscal feasibility or to liquidate and distribute its assets." *Id.* at 93–94. To accomplish this, "[t]he conservator . . . steps in to the private status of the entity" and "take[s] over its assets and the operation" of its business "in order to preserve and conserve the assets and property of [the institution]." *Id.* at 94. *Herron* then concluded that the appointment of FHFA as conservator for a private corporation such as Fannie Mae did not transform that corporation into a government actor. *Id.*

In reaching its conclusion, the *Herron* explained that the FHFA conservatorship does not retain for the government the permanent authority to appoint a majority of Fannie Mae's directors. *Id.* at 95. Nor does the appointment "establish *perma-*

*nent* government authority to control Fannie Mae." *Id.* The fact that FHFA, as conservator, has control over Fannie Mae's business does not mean that this is a permanent condition. A "conservatorship is temporary by its nature," and "Fannie Mae remains a private corporation," albeit it one that is under the supervision of a conservator. *Id.* at 96. The *Herron* court summarized its holding as follows:

> As described above, a conservator or receiver steps into the shoes of the private entity—it assumes the private status of the entity. Fannie Mae was a private entity; when FHFA took over as conservator of Fannie Mae, it stepped into Fannie Mae's private role. In sum, FHFA as conservator of Fannie Mae is not a government actor[.]

*Id.* at 96 (citations omitted).

The Defendants cite two other decisions consistent with *Herron* supporting their contention that the appointment of FHFA as conservator of Fannie Mae did not transform Fannie Mae into a government actor for purposes of constitutional claims. Both of these decisions are unreported. *See Syriani v. Freddie Mac Multiclass Certificates Series 3365, et al.,* No. 12–3035–JFW, 2012 WL 6200251 (C.D.Cal. July 10, 2012) (Defs.' Reply Br., Ex. A, docket no. 43) (quoting extensively from *Herron,* and holding that "Freddie Mac does not become a governmental actor for Fifth Amendment purposes merely because it is placed into conservatorship" and that the "Federal Housing Finance Agency's 'control' is merely the same control that Freddie Mac had before the conservatorship"); and *Federal Home Loan Mortgage Corp. v. Kelly,* case no. 12–1734 LT (55th Dist.Mich., July 15, 2012) (Defs.' Reply Br., Ex. B, docket no. 43) (citing *Lebron, American Bankers Mortgage Corp.,* and *Herron* and holding that Freddie Mac is not a government entity liable for consti-

tutional claims). In addition, since this matter was heard, another court has ruled consistent with *Herron*. *See Rubin v. Fannie Mae*, No. 12–cv–12832, 2012 WL 6000572, at *2–3 (E.D.Mich. Nov. 30, 2012) (finding "that Fannie Mae is not a federal actor and dismiss[ing the plaintiff's] constitutional claims" based on *Northrip, Lebron* and *Herron* ).

The Debtor acknowledges that there are no reported decisions accepting his argument that the appointment of FHFA is a "game changer." Further, the Debtor concedes that the very same arguments that he makes in this case were expressly rejected by *Herron*. Nonetheless, the Debtor suggests that *Herron* is distinguishable from his case because the constitutional claims alleged by the plaintiff in *Herron* (i.e., first amendment) are different than the constitutional claims alleged by the Debtor against Fannie Mae (i.e., due process and equal protection).

After reviewing all of the cases cited by the parties, the Court holds that the Defendants are entitled to dismissal of not just counts III and IV, but of the entire complaint because the Debtor has failed to plead any facts that plausibly suggest an entitlement to relief against Fannie Mae. First, despite the fact that the Defendants do not rely upon *Northrip*, and that it was the Debtor who cited *Northrip*, the Debtor offers no reason why *Northrip* does not control this case other than the Debtor's belief that it would be decided differently today. The Court is not persuaded that there are any facts alleged in the Debtor's complaint that would change the result in *Northrip* if it were decided today. *Nor-*

*thrip* holds that "[m]ortgage foreclosures through power of sale agreements are not powers of a government nature." 527 F.2d 23, 31 (6th Cir.1975). *Northrip* further holds that there is not "a sufficiently close nexus" between the government and the challenged act of foreclosure so that the action of the latter may fairly be treated as that of the government. *Id.* at 32.[2]

Second, all of the claims in the Debtor's complaint, including the foreclosure sale claims governed by *Northrip*, allege constitutional violations by Fannie Mae. As explained above, *Lebron* governs the question of whether Fannie Mae is a government actor for purposes of liability for constitutional claims as the Sixth Circuit's opinion in *Parrett* expressly stated. To be a government actor for this purpose, *Lebron* requires a showing that the government has retained for itself permanent authority to appoint a majority of the board of directors. The Debtor's complaint does not allege any facts to meet this showing other than the appointment of FHFA as conservator for Fannie Mae. Nor does the Debtor cite to any reported or unreported decision holding Fannie Mae to be a government actor for purposes of liability for constitutional claims. The sole fact pleaded by the Debtor in his complaint upon which the Debtor alleges that Fannie Mae is a government actor is the fact that the FHFA was appointed as conservator for Fannie Mae on September 7, 2008 (¶ 7 of complaint). The Court disagrees with the Debtor that this fact is a "game changer," and instead agrees with the analysis of this fact by the *Herron* court and the other cases cited by the

---

**2.** If anything, the Debtor's case is weaker than *Northrip*. Although the Debtor's complaint is imprecise, the Debtor does not even allege that Fannie Mae conducted the foreclosure sale. Instead, paragraph 12 of the complaint alleges that "the property was sold to Bank of America, the seller servicer," and then later deeded to Fannie Mae. Even if this language could be read as alleging that Fannie Mae had some role in the foreclosure process, *Northrip* controls and requires dismissal of any claim by the Debtor against Fannie Mae regarding the foreclosure sale process.

Defendants. A review of the statute that authorized the conservatorship also supports this analysis.

Although not mentioned in either the Debtor's complaint or the Debtor's brief, the statute under which FHFA was appointed as conservator, 12 U.S.C. § 4617, specifies the powers and duties of the FHFA as conservator. There is nothing in the statute that makes the conservatorship permanent. In § 4617(a)(2), the FHFA may "be appointed conservator or receiver for the purpose of reorganizing, rehabilitating, or winding up the affairs" of Fannie Mae. Section 4617(a)(5) authorizes judicial review by the United States District Court upon the request of Fannie Mae to have the FHFA remove itself as conservator. Section 4617(a)(4)(D) provides that the appointment of FHFA as receiver terminates the conservatorship. Section 4617(b) sets forth the powers and duties of the FHFA as conservator. Although the powers of the conservator authorize it to step into the shoes of Fannie Mae with respect to the assets and operations of Fannie Mae, there is no provision in the statute that retains for the federal government any permanent control over Fannie Mae.

Nor does the one exhibit attached to the Debtor's complaint in any way suggest that the appointment of FHFA as conservator is "game changer" for purposes of Lebron. The Congressional Research Service Report that is attached as Exhibit A to the Debtor's complaint summarizes the reasons for the appointment of FHFA as conservator for Fannie Mae and the powers that FHFA has over Fannie Mae as conservator. It contains only one statement even arguably relevant to the length of time of the conservatorship, and whether the government has retained permanent control over Fannie Mae by means of the conservatorship. Page 3 of the report states: "The conservatorship will end when the FHFA finds that a safe and solvent condition has been restored." However, the fact that the conservatorship may be of an indefinite period of time to accomplish the purposes of the conservatorship does not equate to a finding that the conservatorship implements permanent control over Fannie Mae. Although the Debtor's response to the Defendants' motion to dismiss contains many pages of other factual allegations about Fannie Mae and FHFA, none of those allegations are set forth in the Debtor's complaint. There is no allegation either in the Debtor's complaint or incorporated by reference in the complaint by the Congressional Research Service Report attached as Exhibit A that alleges any facts that plausibly suggest that the federal government permanently retains control over Fannie Mae, which is one of the requirements in order to make Fannie Mae a government actor under the Lebron test.

Third, the Debtor's attempt to distinguish Herron is unpersuasive. It is irrelevant what the specific constitutional violations may be for purposes of determining whether an entity is a government actor under Lebron. The Lebron test applies without regard to whether the specific alleged constitutional violation relates to the first amendment, as in Herron, or the fifth and fourteenth amendments, as alleged by the Debtor. For purposes of Lebron, this is a distinction without a difference.

The sole fact that the Debtor has pleaded in the complaint in support of his claim that Fannie Mae is a government actor is that the FHFA was appointed as conservator for Fannie Mae. This fact does not change Fannie Mae's status under the Lebron test, nor does it make Fannie Mae liable for any of the claims in the complaint, under Lebron, Northrip, or the analysis in Herron. This fact does not

plausibly suggest an entitlement to relief against Fannie Mae. The Debtor's complaint does not contain any other factual content for the Court to conclude that the Debtor is plausibly entitled to a determination that Fannie Mae is a government actor. Therefore, the Debtor's complaint must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### Conclusion

As noted above, the Defendants have moved for dismissal on two additional grounds, res judicata and standing. It is unnecessary for the Court to reach those alternative grounds for dismissal. For the reasons explained above, the Court concludes that the *Rooker–Feldman* doctrine precludes the Debtor from attacking the foreclosure sale and the State Court Judgment and requires dismissal of counts I and II. The Debtor lost in the State Court Lawsuit, and Fannie Mae was awarded the State Court Judgment. The only claims asserted by the Debtor in his complaint in this adversary proceeding that survive a *Rooker–Feldman* analysis are those claims asserted in counts III and IV based upon facts alleged in paragraphs 17, 19, 26, 33, 34 and 40 of the Debtor's complaint. But any relief in favor of the Debtor and against Fannie Mae because of those factual allegations and counts can only be awarded if Fannie Mae is a government actor. For the reasons explained above, the Court concludes that under the *Lebron* test, Fannie Mae is not a government actor, and did not become a government actor when FHFA was appointed as conservator. As a result, all of the Debtor's claims set forth in the complaint must be dismissed. The Court expresses no view about the Defendants' alternative grounds for dismissal based upon res judicata and standing.[3]

The Court will enter an order consistent with this opinion.

---

**3.** Although not raised by the Defendants, there is another problem with the Debtor's complaint that is worth mentioning. The Debtor is in Chapter 7. As such, all of the claims that the Debtor may have against Fannie Mae based upon Fannie Mae's pre-petition conduct are property of the Debtor's bankruptcy estate under § 541(a)(1) of the Bankruptcy Code. To the extent any such claims exist (and the Debtor's schedule B does not list any such claims), it is the Chapter 7 Trustee, and not the Debtor, who has the sole right to bring such claims against Fannie Mae. The Debtor has no standing to pursue such claims. *Auday v. Wet Seal Retail, Inc.,* 698 F.3d 902, 904 (6th Cir.2012).